**DAN CAKE (PORTUGAL)**
**S.A., Plaintiff,**

**v.**

**CVS PHARMACY, INC., Defendant.**

**CA No. 11–054–M.**

United States District Court,
D. Rhode Island.

May 25, 2012.

Melissa M. Horne, Winograd Shine Land & Finkle, P.C., Providence, RI, E. Martin Stutchfield, Winograd, Shine & Zacks, Providence, RI, for Plaintiff.

Jeffrey S. Brenner, Nixon Peabody LLP, Providence, RI, for Defendant.

### MEMORANDUM AND ORDER

JOHN J. McCONNELL, JR., District Judge.

Plaintiff Dan Cake (Portugal) S.A. ("Dan Cake") brought this suit against Defendant CVS Pharmacy, Inc. ("CVS"), alleging that CVS breached a contract that it made with Plaintiff to purchase holiday tins containing cookies ("cookies") to be sold in CVS stores throughout the country. Plaintiff's Amended Complaint contains four counts: book account, breach of contract, conversion, and accounting. Before the Court for decision is CVS's Motion to Dismiss Plaintiff's Amended Complaint. (ECF No. 15.) Dan Cake opposed CVS's motion. (ECF No. 17.) Because the Court finds that CVS did not breach the contract with Dan Cake, CVS's Motion to Dismiss is GRANTED.

## I. FACTS AND TRAVEL

CVS is a national pharmaceutical chain based in Woonsocket, Rhode Island and Dan Cake is a baked goods manufacturer based in Portugal. (ECF No. 17 at 5–6.) CVS's category manager, Jane Ellis ("Ellis"), was responsible for developing the 2007 holiday cookie program, which included purchasing cookies from Dan Cake. (*Id.* at 6.) Dan Cake, a foreign supplier, obtained the assistance of KKM, LLC ("KKM") to facilitate the transaction between Dan Cake and CVS. (*Id.*) Duane Ulgerhait ("Ulgerhait") and Cynthia Ber-

nard ("Bernard") were the two KKM employees who were responsible for communicating with both CVS and Dan Cake. (*Id.* at 6–7.) KKM was not authorized to make binding decisions without Dan Cake's consent. (*Id.* at 7.) Mitesh Jamnadas ("Jamnadas") was directly responsible for the CVS transaction as Dan Cake's Export Director. (*Id.*)

On or about June 28, 2007, CVS agreed to issue fourteen purchase orders totaling $197,351.08 for cookies and Dan Cake agreed to deliver the cookies with a ship to arrival date in September 2007. (ECF No. 14 at 1–2.) This original agreement provided that Dan Cake would supply CVS with 12,324 cases of cookies by September 12, 2007 and CVS would pay the full cost of the goods to Dan Cake within 30 days of receipt. (*Id.*)

Due to a delay in shipping the cookies from China to Portugal, Dan Cake requested an extension of the delivery date to October 2007. (ECF No. 17 at 7.) CVS agreed to this initial extension. (*Id.*) After hearing of further delays, however, CVS requested new contract terms. (*Id.* at 8.) On October 31, 2007, CVS sought markdown coverage of 50% off retail on all unsold product up to 90% sell through. (*Id.*) KKM responded and informed CVS that Dan Cake agreed to the modification, stating: "Dancake (sic) has agreed to CVS's Seasonal Markdown Policy. Dancake (sic) will be responsible for 50% of the Retail Cost for all sales that do not achieve 90% Sell Through." (*Id.*)

On November 19, 2007, after even more delays, CVS informed KKM that it was cancelling the entire cookie order. (*Id.* at 9.) KKM responded, asking CVS not to cancel the orders. (*Id.*) CVS replied with a modified proposal:

[My only suggestion is that] we will pay on scan at full cost on all goods that sell through 12/25 if I decide to take receipt

of the product. That means I don't pay for anything that sells from 12/26 forward, this would supercede the prior agreement of md [markdown] coverage. (*Id.*) KKM acknowledged the proposed modifications that same day: "I'm pleased to confirm Dan Cake has agreed to your suggestion of paying scan at full cost on all goods that sell thrrough [sic] 12/25/07. (ECF No. 15–1 at 9.) CVS will not pay for the goods from 12/26/07 and this note serves to supercede the prior agreement of markdown coverage." (*Id.*) KKM then forwarded to CVS a November 19, 2007 email from Jamnadas of Dan Cake to Ulgherait of KKM: "Please find listed below Mitesh's [Dan Cake] confirmation for your requested "New" Markdown parameters for your reference." (*Id.*) The forwarded email from Dan Cake to KKM stated: "As agreed we are trying to get the product in the DCs [distribution centers] ASAP. We will accept Jane's [CVS] proposal but will ask you to make sure that goods do get out to the stores as quickly as possible ..." (*Id.* at 10.)

The cookies finally arrived at CVS's distribution centers between December 5 and December 15, 2007 and were distributed to CVS stores between December 9 and December 22, 2007. (*Id.* at 10–11.) Out of the 47,520 units that CVS shipped to its stores, only 4,822 units were sold (roughly 10%) through December 25, 2007. (ECF No. 17 at 10.) CVS dropped the prices of the unsold cookies 50% from December 26 to December 29, 2007; 75% from December 30, 2007 to January 4, 2008; and 90% from January 6, 2008 to January 12, 2008. (*Id.*) On January 13, 2008, CVS threw out the remaining cookies. (*Id.*)

Beginning on January 8, 2008, Dan Cake began to seek sales information in order to determine when it could expect payment. (*Id.* at 11.) After numerous inquiries, on or about March 25, 2008, CVS provided a

check to Dan Cake for $19,214.06 as payment for the units sold on or before December 25, 2007. (*Id.*) CVS did not pay Dan Cake for the remaining units shipped but not sold before December 25, 2007. (*Id.* at 12.)

In January 2011, Dan Cake filed this suit against CVS seeking damages under a book account and breach of contract causes of action. (ECF No. 1.)[1] On October 31, 2011, after discovery was completed and closed, CVS filed a motion for summary judgment on those two counts. (ECF No. 10.)[2] On November 21, 2011, Dan Cake filed its Amended Complaint, adding counts for conversion and accounting. (ECF No. 14.) CVS then filed its Motion to Dismiss Plaintiff's Amended Complaint that is currently before the Court. (ECF No. 15.)

## II. STANDARD OF REVIEW [3]

CVS moves to dismiss the claims for a book account and for breach of contract on a Federal Rule of Civil Procedure Rule 56 motion for summary judgment standard. Summary judgment can be granted only when the Court finds that there is no genuine issue of material fact and that the undisputed facts give rise to an entitlement to judgment as a matter of law. *Wilson v. Moulison N. Corp.*, 639 F.3d 1, 6 (1st Cir.2011). The Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in his [or her] favor. *Id.* How-

ever, the non-moving party "must point to 'competent evidence' and 'specific facts' to stave off summary judgment." *Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London,* 637 F.3d 53, 56 (1st Cir.2011) (quoting *McCarthy v. Nw. Airlines, Inc.,* 56 F.3d 313, 315 (1st Cir.1995)). A summary judgment motion cannot be defeated by "conclusory allegations, improbable inferences, acrimonious invective, or rank speculation." *Ahern v. Shinseki,* 629 F.3d 49, 54 (1st Cir.2010).

## III. LEGAL ANALYSIS

In its Amended Complaint, Dan Cake seeks damages under four counts: a book account; breach of contract; conversion; and for an accounting. Because the Court finds, based on the parties' briefs and oral argument, that CVS's motion rises and falls on Plaintiff's breach of contract claim, it will address this claim first.

As an initial matter, Dan Cake argues that KKM did not bind it to the November 19, 2007 modification because KKM did not have actual or apparent authority to do so. (ECF No. 17 at 22.) CVS agrees that KKM did not have total decision-making authority, but argues that KKM could bind Dan Cake when it first consulted it prior to conveying the agreement with CVS. (ECF No. 15-1 at 18.) The Court finds, based on the evidence before it, that it is irrelevant whether KKM had actual, apparent, or no authori-

1. Dan Cake filed its Complaint in state court; CVS removed it to this Court in February 2011.

2. The Motion for Summary Judgment was denied without prejudice by Text Order dated November 21, 2011 because the Plaintiff had subsequently filed a Motion to Amend the Complaint.

3. Although the parties are before the Court on Defendant's Motion to Dismiss the Amended

Complaint, the parties have acknowledged that because of the advanced posture of the case, a summary judgment standard applies to Count I for a book account and Count II for breach of contract. (See ECF No. 18 at 2.) Therefore, the Court will refer to not only the facts alleged in the Amended Complaint, but also to facts submitted by both parties on this motion-none of which appear to be disputed by either party.

ty. Upon review of the record, it is clear that Dan Cake itself accepted the terms of CVS's modified offer in the November 19, 2007 Jamnadas–Ulgherait email that KKM forwarded to CVS. (*See* ECF No. 15-1 at 9.) The plain language of the forwarded email demonstrates that Dan Cake unequivocally accepted CVS's modification. (*Id.* at 10.) ("As agreed we are trying to get the product in the DCs [distribution centers] ASAP. We will accept Jane's [Ellis of CVS] proposal but will ask you to make sure that goods do get out to the stores as quickly as possible ...") Thus, there is no issue of whether KKM acted outside the scope of any authority.

### A. Breach of Contract

The crux of the parties' dispute lies in the interpretation of the November 19, 2007 modified contract, specifically the definition of "pay on scan." Dan Cake alleges that "pay on scan" means that "the supplier retains title to the goods until the seller consummates a sale to the consumer." (ECF No. 17 at 25–26.) CVS argues that the modified contract between CVS and Dan Cake was a straight sale governed by Article 2 of the UCC.[4]

■ "Contract interpretation presents, in the first instance, a question of law, and is therefore the court's responsibility." *Fashion House, Inc. v. K mart Corp.*, 892 F.2d 1076, 1083 (1st Cir.1989). Determining whether a contract is ambiguous is a question of law for the Court. *Kelly v. Tillotson–Pearson, Inc.*, 840 F.Supp. 935, 944 (D.R.I.1994). "[A] contract is ambiguous only when it is reasonably and clearly susceptible of more than one interpretation." *Rotelli v. Catanzaro*,

686 A.2d 91, 94 (R.I.1996). "If the terms are found to be unambiguous, however, the task of judicial construction is at an end and the parties are bound by the plain and ordinary meaning of the terms of the contract." *Zarrella v. Minnesota Mut. Life Ins. Co.*, 824 A.2d 1249, 1259 (R.I.2003). Under Rhode Island law, the court's part in construing contractual language is to determine the parties' intent. *Johnson v. Western Nat. Life Ins. Co.*, 641 A.2d 47, 48 (R.I.1994).

■ Based on a review of the contract language, the Court finds that the modified contract language was unambiguous. The proposal and acceptance is as follows:

CVS to KKM: "My only suggestion is that we will pay on scan at full cost on all goods that sell through 12/25 if I decide to take receipt of the product. That means I don't pay for anything that sells from 12/26 forward, this would supercede the prior agreement of md [markdown] coverage." (ECF No. 17–9 at 3.)

Dan Cake to KKM: "As agreed we are trying to get the product in the DCs [distribution centers] ASAP. We will accept Jane's [CVS] proposal but will ask you to make sure that goods do get out to the stores as quickly as possible ..." (ECF No. 15–8 at 2.)

KKM to CVS: "I'm pleased to confirm Dan Cake has agreed to your suggestion of paying scan at full cost on all goods that sell thrrough [sic] 12/25/07. CVS will not pay for the goods from 12/26/07 forwards and this note serves to supercede the prior agreement of markdown coverage." (ECF No. 15–7 at 2.)

---

4. Dan Cake has never alleged that the modification was a "consignment" agreement. (*See generally* ECF No. 17.) Moreover, Article 9 of the Rhode Island Uniform Commercial Code applies to consignments, R.I. Gen. Laws

§ 6A–9–109 (official comment 6), and Dan Cake acknowledges that Article 2 of the Rhode Island Uniform Commercial Code governs the contract modification in this case. (ECF No. 17 at 24.)

Based on this language, it is clear to the Court that both parties' intended to enter into a contract modification on November 19, 2007 in which CVS would only pay for the cookies sold on or before December 25, 2007, and would not pay Dan Cake for any cookies sold after December 25, 2007. *See Johnson*, 641 A.2d 47, 48. This quoted language is not "reasonably and clearly susceptible [to] more than one interpretation." *See Rotelli*, 686 A.2d at 94. The modification clearly indicates that CVS owned the cookies, was obligated to pay Dan Cake for the cookies sold on or before December 25, 2007, was not obligated to pay for any cookies sold after December 25, 2007, and the prior agreement of markdown coverage was dissolved. There is nothing in the modification indicating that CVS had any obligation to Dan Cake once it took delivery of the cookies other than to pay for the cookies sold prior to Christmas Day.[5]

Because the Court has determined that the modified contract language is unambiguous, "the parties are bound by the plain and ordinary meaning of the terms of the contract." *Zarrella*, 824 A.2d at 1259. Dan Cake argues that "pay on scan" means that the supplier of the goods retains title to them until the seller makes the sales, creating a consignment arrangement. (ECF No. 17 at 26.) According to that definition, Dan Cake retained title to the cookies until CVS sold them and any unsold cookies would be returned to Dan Cake as its property. The breach of contract, therefore, occurred when CVS failed to either pay for the unsold cookies or to return them. In the alternative, Dan Cake alleges the "pay on scan" term is ambiguous and requires contract interpretation for the trier of fact. (*Id.* at 30.) It contends the "pay on scan" term is ambiguous because it is clearly susceptible to more than one meaning since the parties were operating under different understandings of what the term meant. (*Id.* at 32–33.)

In response, CVS contends that the modified contract was a straight sale pursuant to R.I. Gen. Laws § 6A-2–106(1) and, as a straight sale, title of the cookies passed to it from Dan Cake when CVS accepted delivery. CVS contends the modification on November 19, 2007 stated clearly that CVS would not "pay for anything that sells from 12/26 forward" and that this term of the agreement is inconsistent with a consignment agreement. (ECF No. 18 at 4.) Additionally, Dan Cake never explicitly reserved the right of return of any cookies not sold by December 25, 2007. (*Id.*) Under its interpretation of "pay on scan," CVS argues that it performed under the modified contract, that it did not breach the contract because it paid for all of the cookies sold through December 25th and therefore this Court should

---

**5.** Dan Cake argues that the meaning of pay on scan was unclear, causing Jamnadas (Dan Cake) to call Ellis (CVS) to clarify. (ECF No. 17 at 9–10.) Jamnadas testified at her deposition that Ellis told her that the expected loss on the proposed modification would be 20 to 25% of the total value of the cookies. (*Id.* at 10.) CVS disputes that this conversation occurred, but nevertheless argues that an alleged oral conversation cannot alter or add to the terms of an unambiguous, written contract. The Court agrees. Evidence of this oral conversation is barred by the parol evidence rule, which "bars the use of any previous or contemporaneous oral statements that attempt to modify an integrated written agreement." *Nat'l Refrigeration, Inc. v. Standen Contr. Co., Inc.*, 942 A.2d 968, 972 (R.I. 2008) (citing *Riley v. St. Germain*, 723 A.2d 1120, 1122 (R.I.1999)). A final agreement existed between Dan Cake and CVS in the form of the November 19, 2007 email and therefore, "any additional declarations made before or at the time the contract was entered into are not part of the agreement." *Id.* at 973 (citing *Filippi v. Filippi*, 818 A.2d 608, 619 (R.I.2003)).

dismiss Dan Cake's entire Amended Complaint.

Under Rhode Island law, a sale consists of the passing of title from the seller to the buyer for a price. R.I. Gen. Laws § 6A–2–106.

> *"Unless otherwise explicitly agreed,* title passes to the buyer at the time and place at which the seller completes his or her performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place." R.I. Gen. Laws § 6A–2–401 (emphasis added).

Based on the record, the Court finds that the modified contract was a straight sale of goods. Title passed to CVS when Dan Cake physically delivered the cookies to it with the understanding that CVS would only pay for the cookies sold on or before December 25, 2007. *See* R.I. Gen. Laws § 6A–2–106. There was no otherwise explicit agreement in the modified contract, therefore, a sale occurred when CVS took delivery of the cookies. *See* R.I. Gen. Laws § 6A–2–401. Specifically, retained title to the cookies or that CVS was obligated to return the cookies to Dan Cake.

Moreover, Dan Cake's reading of the contract would be illogical. The parties clearly agreed that CVS would not pay Dan Cake for any cookies sold after December 25th. The only interpretation of that contract is that CVS could and would continue to sell the cookies after December 25th and would be entitled to keep the proceeds from those sales. The only reasonable conclusion therefore is that CVS owned the cookies when it took delivery. It would be inconsistent for Dan Cake to assert an interest (although never in writing) in the cookies after December 25 after agreeing that CVS could keep all of the proceeds from sales occurring after December 25th.

Dan Cake's reliance on *CVS, Inc. v. Beneficial Holdings, Inc. et al.,* C.A. No. 05–CV–171T (D.R.I. March 25, 2005) to argue that CVS has previously defined "pay on scan" as a consignment is misplaced. In that case, the supplier signed an indemnification agreement and a return goods agreement. Under Rhode Island law, a return goods agreement is not like a consignment agreement. *See* R.I. Gen. Laws § 6A–2–326(1). Specifically, a return goods agreement requires a separate contract for sale within the statute of frauds and must be in writing. R.I. Gen. Laws § 6A–2–326(3). Therefore, Dan Cake's argument that CVS's definition of "pay on scan" in *Beneficial Holdings* is applicable in this case falls short because there was no indemnification and because there was no separate, and in writing, returns goods agreement. Moreover, the plain language of the modification does not indicate that Dan Cake retained title of the goods until CVS sold them and thus, any argument that CVS was required to return the goods is inconsistent with Rhode Island law.

In light of the Court's determination that the contract between CVS and Dan Cake was a sale of goods, the Court must consider whether CVS breached the contract by throwing out the unsold cookies. As previously discussed, the modified contract contained no express provision requiring CVS to pay for or return the unsold cookies to Dan Cake. Moreover, because the contract was a sale of goods, Rhode Island law requires a sale or return goods agreement to be a separate contract for sale within the statute of frauds and must be in writing. *See* R.I. Gen. Laws § 6A–2–326(3). The record is clear that the modification on November 19, 2007 did not include a separate con-

tract evidencing a sale or return goods agreement. Therefore, the Court finds that CVS did not breach the contract by disposing of the cookies and as such, CVS's motion to dismiss Dan Cake's breach of contract count is GRANTED.

### B. Plaintiff's Remaining Counts

Because the Court found that CVS did not breach the modified contract (Count II), Dan Cake's other claims for a book account, an accounting, and conversion (Counts I, III and IV) must fail.

### C. Attorneys' Fees

CVS contends that Dan Cake's allegations have no merit and CVS should be awarded reasonable attorneys' fees in defending this action. (ECF No. 15–1 at 28.) The Court may award reasonable attorneys' fees to the prevailing party in a civil action arising from a breach of contract in which the Court finds that there is a complete absence of justiciable issue of either law or fact raised by the losing party. *See* R.I. Gen. Laws § 9–1–45. However, the Court finds that there was a justiciable issue in this matter because there was a question of contract interpretation requiring the Court's review. Therefore, a justifiable issue was present and CVS's request for attorneys' fees pursuant to R.I. Gen. Laws § 9–1–45 is DENIED.

### IV. CONCLUSION

Based on the foregoing analysis, the Court GRANTS Defendant CVS's Motion to Dismiss Plaintiff Dan Cake's Amended Complaint (ECF No. 15) in its entirety.

IT IS SO ORDERED.